UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANIEL BANKEN,<br><br>Plaintiff(s),<br>v.<br><br>DANIEL P. DRISCOLL,<br><br>Defendant(s). | CASE NO. C24-06071-KKE<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff Dr. Daniel Banken, proceeding pro se, has sued the United States Army alleging age discrimination and retaliation claims under the Age Discrimination in Employment Act ("ADEA"). The parties have cross-moved for summary judgment. Dkt. Nos. 118, 120. Because no genuine issue of material fact exists as to either of his claims, the Court will grant Defendant's motion and deny Banken's motion, and close this case.

## I. FACTUAL BACKGROUND

Banken worked as a civilian psychologist for the Army at two facilities: Madigan Army Medical Center on Joint Base Lewis-McChord, Washington ("Madigan"), from 2009 to 2016, and the U.S. Army Health Clinic at NATO's Supreme Headquarters, Allied Powers Europe ("SHAPE"), in Belgium, from 2016 to 2021. Dkt. No. 66-6 at 5; Dkt. No. 119-2; Dkt. No. 119-1 at 19:3–7, 32:4–6. Banken was hired as a GS-13 Clinical Psychologist at Madigan on April 20, 2009. Dkt. No. 119-1 at 5:17–22. Upon hiring, Banken received a retention incentive of at least

25% of his base pay, renewable annually, which was progressively decreased over the following years—to 20% in 2011, 10% in 2013, and 5% in 2014. Dkt. No. 119-2 at 4; Dkt. No. 119-3; Dkt. No. 119-1 at 9:7–12:4, 12:15–13:17, 14:4–15:1. In 2016, Banken asked to be promoted to GS-14, but leadership at Madigan ultimately denied Banken's request. Dkt. No. 119-5 at 10–13. Madigan instead offered to increase Banken's retention incentive back to 10% but keep him at GS-13. *Id.* at 12; Dkt. No. 119-1 at 15:10–21. Banken accepted the offer, and on February 8, 2016, he signed a retention agreement to stay in his position until March 4, 2017. Dkt. No. 119-8.

In October 2016, Banken was offered a GS-14 Supervisory Clinical Psychologist position with the SHAPE clinic in Belgium. Dkt. No. 119-9 at 6–7; Dkt. No. 119-1 at 19:3–17; Dkt. No. 119-4 at 8:8–22; 10:6–14. Though his requests for a retention incentive and a relocation bonus were both denied, Banken accepted the SHAPE offer anyway, writing that he "remain[ed] very happy to have accepted the position." Dkt. No. 119-9 at 2–3, 8–9; Dkt. No. 119-1 at 20:14–23:7. He assumed the SHAPE position as chief of behavioral health in January 2017. Dkt. No. 119-1 at 33:15–22.

When Banken began work at SHAPE, Madigan canceled his 10% retention incentive. Dkt. No. 119-1 at 15:13–16:22. Banken's predecessor at SHAPE, Etherage, had also come from Madigan, though from a GS-15 position. *Id.* at 18:9–12. Banken conceded in his deposition that Etherage's retention bonus at Madigan was likewise discontinued when he left for SHAPE. Dkt. No. 119-4 at 23:14–22. Banken also testified he believes that Etherage's retention bonus was "reinstated" by SHAPE upon Etherage's request but acknowledged that he does not know the details of that purported reinstatement.[1] *Id.* at 23:14–25. Like Banken, Etherage was approximately 50 years old while at SHAPE. Dkt. No. 119-1 at 52:5–7, 53:4–7.

[1] Banken cites no evidence in support of this belief. *See* Dkt. No. 124 at 11.

Banken contacted the Army's Equal Employment Opportunity ("EEO") in late 2018 or early 2019, alleging age discrimination and harassment by his then-supervisor, Major Hawkins. Dkt. 119-4 at 10:15–11:23. The Army's ensuing investigation led to a June 2019 settlement agreement, under which Banken waived all age-discrimination claims against the Army predating the agreement in exchange for a settlement payment, though claims related to his pay rate and job classification were excluded from the waiver. *Id.* at 12:10–13:5, *id.* at 31–35. Banken's position was also moved out from under Hawkins' supervision to report to Deputy Commander of Nursing Anthony Rhea. Dkt. 119-4 at 13:2–12. Hawkins was relieved of his position as Deputy Commander of Clinical Services ("DCCS") in November 2019. Dkt. No. 119-10 at 3–4. After a brief vacancy, Captain Rachel Egbert ("Capt. Egbert") became DCCS in Spring 2020, and Banken's position moved back to report to the DCCS. Dkt. 119-10 at 3–4; Dkt. 119-11 at 2. The DCCS at SHAPE reported to the Commander of SHAPE Healthcare Facilities. Dkt. No. 119-11 at 3. The Commander from June 2019 through Banken's departure was Colonel Kathleen Spangler ("Col. Spangler"). *Id.*; Dkt. No. 119-6 at 10; Dkt No. 119-15 at 2–3.

While at SHAPE, Banken repeatedly raised concerns about his pay rate and classification with his supervisors, asserting he should have been paid more and classified as a GS-15 based on his belief that he was serving in the role of Installation Director of Psychological Health ("IDPH"). Dkt. 119-4 at 14:16–24; Dkt. 119-1 at 40:15–22. The Army repeatedly informed him that he had not been appointed to that role and was not performing its duties. Specifically, his supervisor explained to Banken that he was "not considered an IDPH," but rather, a "Sub-Chief" and he was doing too much work outside his position description, seeing too few patients, and would need to raise his productivity rate from 10% to 40% to meet the standards for an IDPH. Dkt No. 119-15 at 8–9; Dkt. 119-4 at 15:22–25; Dkt. 119-1 at 26:7–27:9; 42:17–43:14. She also explained that all the other Army Health Clinic ("AHC") Sub-Chiefs were classified at the GS-14 level, even though

several other AHC Sub-Chiefs had larger staff to manage than Banken oversaw at SHAPE. Dkt No. 119-15 at 8.

Banken was initially offered a three-year tour at SHAPE, extendable to five years, with the right to return to Madigan afterward. Dkt. No. 119-1 at 28:14–29:22. His tour was extended to five years in 2019. *Id.* at 28:19–29:2. Banken knew the Army's policy against extending overseas tours past five years absent exceptional circumstances. *Id*. at 29:19–30:5, 34:1–7; *see id*. at 55:7–57:20; Dkt. 119-15 at 11–13, 16. In the fall of 2020, Banken nonetheless asked Capt. Egbert to extend his term beyond five years, but citing the policy, she denied the request. Dkt. No. 119-11 at 4–6. Col. Spangler agreed that Banken's tour could not be extended. Dkt. 119-4 at 24:14–22; Dkt. 119-11 at 4–6, 9; Dkt. 119-15 at 14. Banken was informed on October 14, 2020 that his request was denied, and Col. Spangler repeatedly tried to explain to Banken that this had long been Army policy. Dkt. 119-15 at 11, 13.

Banken's tour was thus scheduled to end in January 2022. Dkt. No. 119-1 at 31:17–19. Army policy also required the command to advertise a replacement position at least 15 months before a tour's end. *Id.* at 34:22–35:12. Accordingly, in October 2020, SHAPE posted for the position Banken would vacate when his tour ended. *Id.*; Dkt. 119-15 at 12, 21; Dkt. 119-1 at 40:5–11, 54:15–55:4. Though Banken knew his tour had not been extended, Banken applied for the position through a recruiter anyway. *Id*. at 36:15–22. Given that Banken's tour was ending, SHAPE Human Resources instructed the reviewing panel not to interview Banken, as he was ineligible for the position. *Id.* at 58:10–59:2, 60:5–22. SHAPE did not interview Banken and instead hired one of several other qualified applicants. *Id*. at 60:8–10, 66:5–16; 37:19–38:5.

Banken alleges he could have stayed on at SHAPE beyond the five-year cap on his tour as a "family member hire" sponsored by his wife, a Department of Defense teacher not subject to the five-year cap. He cites the case of JP Blanchard, a social worker on the base roughly two years

older than Banken whose wife was also a teacher, who had taken a position as a family member hire. *Id.* at 8:3–10; 48:21–51:8, 51:19–22. But Banken did not apply for the position as a family member hire. *See id.* at 65:3–22, 67:6–68:17. He instead left the Army on March 13, 2021—ten months before his tour expired—for a GS-15 position at the Department of Veterans Affairs. Dkt. No. 119-1 at 31:17–32:6, 39:9–16.

## II. PROCEDURAL POSTURE

On May 27, 2020, Banken filed a complaint alleging age discrimination and retaliation with the Army's EEO office. Dkt. No. 66-6 at 2. An investigation was conducted by the Department of Defense Investigations and Resolutions Directorate. Dkt. No. 119-20 at 3. Banken was notified of the option to request either a hearing before an Equal Employment Opportunity Commission ("EEOC") Administrative Judge ("AJ") or a final Army decision based on the evidence in the case file. *Id.* Banken requested a hearing before an EEOC AJ and a hearing was conducted from April 17–20, 2023. *Id.* Banken then withdrew his hearing request after which the EEOC AJ remanded the case to the Army's EEO office for a final agency decision based on the evidence of record.

On December 5, 2023, the Army's EEO issued a final decision in favor of the Army on all Banken's claims. *See* Dkt. No. 119-20. Banken timely filed this lawsuit on March 3, 2024. Banken brings claims for disparate treatment based on age under the ADEA and retaliation against protected activity. Dkt. No. 34 at 4–5. The parties have completed discovery and cross-moved for summary judgment, which are now ripe for disposition. Dkt. Nos. 118, 120.

## III. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56, summary judgment is mandated if the non-moving party fails to

make a showing sufficient to establish the existence of an element essential to the nonmoving party's case and on which the nonmoving party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the nonmoving party fails to make such a showing on any essential element, "there can be no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. Further, to preclude entry of summary judgment, an issue must be both "material" and "genuine." *W. Watersheds Project v. Bureau of Land Mgmt*., No. CV 09-482-CWD, 2010 WL 3735710, at *3 (D. Idaho Sep. 13, 2010).

An issue is "material" if it affects the outcome of the litigation. *Id.* An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute … to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co. Inc.,* 391 U.S. 253, 289 (1968)). When applying this standard, the court must view all the evidence in a light most favorable to the non-moving party. *Hughes v. United States,* 953 F.2d 531, 541 (9th Cir.1992). The standards on which the court evaluates motions for summary judgment "do not change simply because the parties present cross-motions." *W. Watersheds Project*, 2010 WL 3735710, at *3 n.5 (quoting *J & J Sports Productions, Inc. v. Phelan,* 2009 WL 3748107 (E.D. Cal. 2009)) (citation modified).

## A. The Army's Motion for Summary Judgment on Banken's Disparate Treatment Claim is Granted.

When responding to a summary judgment motion in a discrimination suit under the ADEA, the plaintiff "may proceed by [either] using the *McDonnell Douglas* framework, as established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not

motivated" the defendant's contested conduct. *Opara v. Yellen*, 57 F.4th 709, 721 (9th Cir. 2023) (cleaned up). "Under either approach, staving off a motion for summary judgment on disparate treatment claims under ADEA and Title VII entails three steps." *Id.*

First, a plaintiff must make out a prima facie case of his discrimination claim. *Id.* In the ADEA context, under the *McDonnell Douglas* test, the factors below give rise to a prima facie showing of age discrimination: (1) membership in a protected class (forty years old or older); (2) satisfactory job performance; (3) an adverse employment action; and (4) replacement by "substantially younger employees with equal or inferior qualifications." *Id.* at 722 (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000)). "Once a prima facie case [of discrimination] has been made, the burden … shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Id.* at 723 (citation modified). Finally, if the employer meets its burden, the burden shifts back to the plaintiff to prove that the articulated reason is pretextual. *Id*. A plaintiff can prove pretext in multiple ways, including "directly, by showing that unlawful discrimination more likely [than not] motivated the employer" or "indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable; or via a combination of these two kinds of evidence." *Id.* (citation modified).

1. <u>Banken Fails to Raise a Prima Facie Case of Disparate Treatment.</u>

Banken challenges his pay, his position classification, the Army's decision not to extend his overseas tour beyond five years, and the decision not to interview Banken to become his own replacement when his tour of duty was up. The Army concedes that Banken meets the first three factors in the *McDonnell Douglas* prima facie test: that Banken was over forty years old, was performing his job well, and that the four challenged actions are cognizable adverse employment

actions under the applicable law.[2] Dkt. No. 118 at 11. However, Banken's case falls apart at the fourth factor. Taking Banken's version of events as true, and construing all inferences in his favor, he nonetheless offers no evidence (either in his own motion or in opposition to the Army's motion) that any younger similarly situated employee was treated more favorably than he was.[3]

As to his employment at Madigan, Banken identified Dr. David Shearer as his comparator, alleging that Dr. Shearer was compensated at a GS-14 level when Banken was not.[4] But the record contains no information about Dr. Shearer's age, and Banken admits that he does not know it. Dkt. No. 119-1 at 1:55: 16-19. Moreover, the record reflects that Dr. Shearer was hired as a GS-13 like Banken, and was only promoted to GS-14 when he applied for and was hired to a different position. Dkt. No. 119-7 at 7-8. Banken does not allege that he sought a different position and was rejected in favor of someone younger. Rather, he objects that he was not paid more in his existing role.

At SHAPE, Banken identifies two comparators who he alleges were treated more favorably, but both are his age or older. Dkt. No. 119-21 at 5. Specifically, he claims that

---

[2] Banken does not cite direct or circumstantial evidence of age discrimination, and thus the Court proceeds under the *McDonnell Douglas* factors.

[3] Throughout Banken's summary judgment briefs, he cites to documents via a "ROI" designation, which the Court presumes references a Record of Investigation, or the "Report of Investigation" referenced in the ALJ's Second Amended Hearing Order from Banken's EEO proceeding. *See* Dkt. No. 119-18 at 10. Banken has also used the designation in various other filings. *See, e.g.*, Dkt. No. 49 (describing ROI exhibits but not attaching any). However, there is no such record attached to Banken's motion for summary judgment or his opposition to Defendant's motion, nor to the Amended Complaint. Dkt. Nos. 124, 122, 34. The docket in this case is long and convoluted, given that Banken has filed many motions and "supplements" at various stages of this case. *See e.g.*, Dkt. Nos. 44–50. Because Banken is *pro se*, the Court has taken extra effort to locate a document in the record designated with the ROI bates numbering but has been unable to do so. Thus, the Court relies on the record identified in the summary judgment motions and the accompanying declarations.

[4] In his discovery responses and his motion, Banken also identified a Dr. Chris Graver as a comparator. Dkt. No. 119-21 at 5. But the record contains no information about Dr. Graver's age or how he is similarly situated to Plaintiff. *See* Dkt. No. 120 at 6; Dkt. No. 122-1 at 2. In Banken's motion, he also references a Dr. Timothy Hoyt who he alleges is "under 40"—but as noted above, Banken failed to identify Dr. Hoyt in discovery. Dkt. 120 at 7. Moreover, Banken offers no admissible evidence that Dr. Hoyt is similarly situated to him in all material respects. The only evidence cited in support of this claim is a chart that Banken prepared himself that purports to show Dr. Hoyt's pay and grade. Dkt. No. 122-1 at 2. Banken's chart is not admissible, as it is both unauthenticated and lacks foundation. *See Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002) ("We have repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment."). And even if the Court considered it, the chart does not establish if or how Dr. Hoyt and Banken were similarly situated.

Etherage, Banken's predecessor at SHAPE, had been working as a GS-15 at Madigan and received a retention incentive while at SHAPE that Banken did not. Even assuming that Etherage and Banken were similarly situated in all respects (a fact Banken does not demonstrate and the Army does not concede), it is undisputed that Etherage is the same age at Banken. Dkt. No. 119-1 at 52: 5–7; 53:4–7. Banken also cites the case of JP Blanchard, a social worker who had been able to stay at SHAPE beyond the five-year tour limit by becoming a family-member hire sponsored by his wife. Putting aside the fact that Banken did not take the steps necessary to achieve sponsorship by his wife (*id.* 65:3–22, 67:6–68:17), it is undisputed that Blanchard is two years older than Banken. *Id.* at 51:19–22.

In his opposition, Banken does not dispute the Army's arguments, but claims that while he identified these comparators in discovery, he intended that they be "illustrative, not exhaustive." Dkt. No. 124 at 14. Banken then identifies other employees he alleges better represent comparators for purposes of defeating the Army's motion. *Id.* But as the Army points out, Banken never identified these other employees in discovery and Rule 37(c)(1) precludes him from doing so now. Dkt. No. 125 at 2; *Fallar v. Compuware Corp.*, 202 F. Supp. 2d 1067, 1079 (D. Ariz. 2002) (A party may not rely on evidence not produced during discovery in opposing a motion for summary judgment). Moreover, even if he had timely identified them, Banken offers no admissible evidence that any of the previously unidentified employees are in fact similarly situated to him in all material respects. *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006) (In making a discrimination claim, "the individuals seeking relief must demonstrate, at the least, that they are similarly situated to those employees in all material respects."). Rather, Banken offers only a chart in his opposition brief (Dkt. No. 122-1 at 2) asserting various facts about the other alleged employees, but without supporting evidence beyond his say-so, and without demonstrating how these employees are sufficiently similar to Banken to meet his burden. Dkt. No. 124 at 4.

In sum, Banken fails to meet his initial burden of showing a prima facie case of age discrimination.

2. The Army Articulates Legitimate Nondiscriminatory Reasons for the Challenged Actions.

Even if Banken had met his burden, the Army responded with a legitimate, nondiscriminatory reason for each of the challenged actions. *Opara*, 57 F.4th at 723. The burden then shifts to Banken to establish a genuine issue of material fact that the Army's neutral explanation is "unworthy of credence because it is internally inconsistent or otherwise not believable." *Chuang v. Univ. of Cal. Davis Bd. of Trs.*, 225 F.3d 1115, 1127 (9th Cir. 2000) (citation modified). The plaintiff's evidence of pretext must be "both specific and substantial." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002). Thus, where "abundant and uncontroverted independent evidence" suggests that no discrimination occurred, plaintiff cannot overcome summary judgment by creating "only a weak issue of fact as to whether the employer's reason was untrue[.]" *Opara*, 57 F.4th at 724 (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 148 (2000)). As detailed below, Banken fails to show any reason is pretextual, and summary judgment is appropriate for the Army.

The Army has provided undisputed evidence of legitimate, nondiscriminatory reasons for each challenged action. And while Banken generally argues that Defendant's own documents prove his case, he does not directly address the record cited by the Army, nor provide "specific and substantial" evidence that the Army's reasons were pretextual.

With respect to Banken's pay, the record reflects that his pay rate was reviewed multiple times by specialists outside his supervisory chain, who consistently found it correctly set. Dkt. No. 119-15 at 4–7; Dkt. No. 119-1 at 76:3–10. Banken also concedes his supervisors respected his request to seek a pay increase, even though they believed a raise was unwarranted. Dkt. No.

124 at 11; Dkt. No. 119-15 at 7–9. Though Banken alleges he complained about his pay beginning in 2010, he also concedes he did not accuse the Army of age discrimination until 2018. Dkt. No. 124 at 12 (noting absence of "age" in earlier correspondence concerning his pay). Indeed, Banken's longstanding objections to his pay rate do more to undercut than support his age discrimination claims.

Similarly, Col. Spangler testified that Banken's position classification as chief of behavioral health was standardized across Army Health Clinics in the region, with equivalents at other clinics performing the same or greater duties at the same classification regardless of age. Dkt. No. 119-15 at 8. Banken offers no evidence to the contrary, and crucially, no evidence that any action related to his classification was a pretext for age discrimination.

Likewise, the Army has presented evidence that the decision not to extend his overseas tour was compelled by Army policy, which permitted extensions beyond five years only in exceptional circumstances that did not exist here. *See* Dkt. No. 119-15 at 12–13. The Army's Overseas Tour Policy states that civilian employment in foreign areas is limited to a period of five years, in order to "increase employment opportunities for Military Spouses and Family Members, increase developmental opportunities for employees in the United States, periodically renew the knowledge and competencies of the overseas workforce, including familiarity with current strategic goals, enhance the interoperability of employees, and promote a joint perspective in the workforce." *Id.* at 11–12. Banken has offered no evidence or argument suggesting these stated policy goals are a pretext for discrimination against him. Rather, he admitted in his deposition that he did not know if Capt. Egbert's decision not to forward his request for an extension of his tour was based on his age or not. Dkt. No. 119-4 at 25:22–26:18.

Finally, the decision not to interview Banken for his own replacement position followed from the same Army policy: having reached the five-year cap, Banken was ineligible to continue

in the role regardless of qualifications. And while Banken might have been able to avoid the five-year cap through a family-member hire sponsored by his wife, contrary to his arguments, Banken fails to show that he pursued that option, and, as discussed, the record suggests otherwise. Dkt. No. 119-1 at 65:11–14. Regardless, Banken further concedes that the only comparator for this option (JP Blanchard) was in fact *older* than Banken when he invoked it. Dkt. No. 119-1 at 8:3–10; 48:21–51:8, 51:19–22. Thus, nothing in the record suggests that the Army's refusal to extend Banken's tour was a pretext for age discrimination.

In sum, Banken fails to raise a genuine issue of material fact as to Banken's disparate treatment claim. The Court will grant Defendant's motion.

**B. The Army's Motion for Summary Judgment on Banken's Retaliation Claim is Granted.**

Banken's retaliation claims also fail as a matter of law. Banken cannot show a causal link between the Army's actions challenged here and his protected activity. And even if he could, again, the Army had legitimate reasons for its actions that Banken has not shown were pretextual.

To make out a prima facie case of retaliation under the ADEA, Banken "must show that (1) [he] engaged in protected activity, (2) he suffered an adverse employment decision, and (3) there was a causal link between the protected activity and the adverse employment decision." *Villiarimo*, 281 F.3d at 1064. As with his discrimination claims, because Banken cites no direct evidence of discrimination, the Court analyzes Banken's retaliation claim under the *McDonnell-Douglas* framework. *Id.* Thus, if Banken can establish a prima facie case, then the Army has the burden of production to articulate a legitimate, non-retaliatory reason for the challenged action. If the Army meets its burden of production, Banken must show that the articulated reason is a pretext for retaliation. Though the Court construes the facts in Banken's favor as the non-movant, the burden of persuasion always remains with Banken. *See Opara*, 57 F.4th at 726.

As with his disparate treatment claim, Banken fails to make out a prima facie case of retaliation. While the Army concedes he engaged in protected activity in 2019 via his complaint about Hawkins, and that the actions he challenges are adverse employment actions under the ADEA, Banken fails to show any causal connection between the protected activity and the actions taken. As detailed above, Banken's pay and classification were reviewed multiple times by HR specialists who independently confirmed they were correct. Dkt. No. 119-15 at 4–7; Dkt. No. 119-1 at 76:3–10. Moreover, the pay and classification reviews determined that his pay and classification were consistent with others in his position through the AHC system. Dkt No. 119-15 at 8. Banken offers nothing but conjecture to the contrary, and no evidence (or argument) that his pay or job classification was in any way based on his prior complaint about Hawkins. To the contrary, Banken acknowledges that he had complained about his pay and classification long *before* his 2019 EEO complaint about Hawkins. Dkt. No. 124 at 11.

The same is true for the decision to not extend his tour of duty beyond five years. The record is well-documented that this decision was consistent with facially neutral Army policy, and moreover, Banken's tour was extended during the pendency of his complaint against Hawkins. This fact undermines his retaliation claim.

Finally, nothing in the record connects Banken's 2019 EEO complaint to the decision not to hire him as his own replacement. While Banken argues that the Army should have considered different evidence in selecting candidates to interview, he does not point to anything in the record suggesting that the Army improperly rejected him from consideration because of his prior EEO complaint.

For the same reasons, even if Banken could make out a prima facie case of retaliation, the Army has presented legitimate nondiscriminatory reasons for each challenged action, and Banken

does not show they were pretextual. Thus, the Court will grant Defendant's motion and dismiss Banken's retaliation claim.

**C. Plaintiff's Motion for Summary Judgment is Denied.**

Plaintiff's motion mentions both the "Fair Pay Act" and "Title VII retaliatory constructive discharge." *See* Dkt. No. 120 at 26–27; Dkt. No. 126 at 9 ("Plaintiff's primary claim is Title VII retaliatory constructive discharge."). However, as Defendant notes, the Lilly Ledbetter Fair Pay Act of 2009 does not contain an independent cause of action. Rather, it extends the time limits in which to bring certain discrimination claims. *See McNair v. D.C.*, 213 F. Supp. 3d 81, 88 (D.D.C. 2016) (finding no stand-alone cause of action, and dismissing at pleadings stage the plaintiff's stand-alone discrimination claim under the Lilly Ledbetter Fair Pay Act). In his reply, Banken concedes he is not bringing a separate Fair Pay Act claim. Dkt. No. 126 at 3. Regarding Title VII, Plaintiff did not plead a Title VII claim, nor does he identify any protected characteristics that would bring him under the ambit of Title VII. Accordingly, to the extent Banken seeks summary judgment in his favor under either statute, his motion is denied.

As to his ADEA claims, Banken does not directly move for summary judgment on his disparate treatment claim, and even if he did, it would fail for the same reasons discussed above.

As to retaliation, as detailed above, Banken misunderstands the applicable standard. Though he argues that he had "active EEO protection" because of his 2019 claim against Hawkins (Dkt. No. 120 at 33), Banken cannot simply point to prior protected activity and ask the Court to assume that all subsequent adverse decisions are retaliatory. Rather, as explained in this order, to make out a retaliation claim, Banken must show a causal connection between his protected activity and the adverse employment action he challenges. For the reasons already discussed, he has failed to do so.

## IV. CONCLUSION

Defendant's motion for summary judgment is GRANTED and Plaintiff's motion for summary judgment is DENIED. The clerk is directed to close this case.

Dated this 27th day of July, 2026.

Kymberly K. Evanson
United States District Judge